**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| LUREATHA JACKSON, as next friend of D.M., for herself and others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>THE BOARD OF EDUCATION OF THE CITY OF CHICAGO, and JANICE K. JACKSON, Chief Executive Officer of the Chicago Public Schools,<br><br>Defendants. | No.    19-cv-5809<br><br>**COMPLAINT** |

**PRELIMINARY STATEMENT**

1. This class action lawsuit seeks to remedy the blatant discriminatory treatment by Chicago Public Schools ("CPS") of public school students placed in non-public schools due to their disabilities. CPS knowingly excludes these vulnerable students with disabilities from free nutrition programs that all other CPS students receive, in violation of federal disability laws.

2. Hunger severely harms children. Among other things, it impedes brain development, causes anxiety and depression, lowers attention span, triggers behavioral issues, and results in poor physical health.[1]

3. The Illinois legislature recognizes a correlation between adequate child nutrition and a child's physical, emotional, and cognitive development. 105 Ill. Comp. Stat. 125/0.05. Illinois also recognizes a correlation between adequate nutrition and a child's ability to perform well in

---

[1] *See, e.g.*, American Psychological Association, *What are the Psychological Effects of Hunger on Children?*, https://www.apa.org/advocacy/socioeconomic-status/hunger.pdf (last visited August 28, 2019).

school. *Id.*

4. Because of the pervasiveness of poverty among CPS students, Defendants participate in the Community Eligibility Provision of the National School Lunch Program and School Breakfast Program. This program is designed to provide free breakfast and lunch to all students without determining individual students' economic eligibility.

5. However, for those students whom Defendants have placed in non-public schools because Defendants cannot adequately accommodate their disabilities in public schools, Defendants refuse to provide this nutritional benefit or to compensate families for the cost of equivalent meals.

6. Defendants' policy—to deny this benefit to students with disabilities in non-public school placements—is harming students and families throughout Chicago, including Plaintiff D.M. and members of the Plaintiff Class, who feel as if they are forced to choose between food and an appropriate education.

7. Defendants' policy to exclude these students is discriminatory and a clear-cut violation of the mandates Defendants are bound by under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504").

8. Lureatha Jackson brings this lawsuit as next friend of D.M., and on behalf of all CPS students with disabilities who have been denied this benefit or will be denied it in the future.

9. D.M. and members of the Plaintiff Class seek an order finding Defendants' policy to be in violation of the ADA and Section 504, and directing CPS to amend the policy and compensate the families that have suffered economic harm to date.

## JURISDICTION AND VENUE

10. Jurisdiction is proper under 28 U.S.C. § 1331, which gives district courts original

2

jurisdiction over all civil actions arising under the laws of the United States. Specifically, Plaintiff's causes of action seek to redress deprivations of their rights pursuant to the ADA and Section 504.

11. This Court has jurisdiction over this action for declaratory relief pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure. Injunctive relief is authorized by 28 U.S.C. § 2202 and Rule 65 of the Federal Rules of Civil Procedure.

12. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Northern District of Illinois and Defendants may be found here.

13. If successful, D.M. and members of the Plaintiff Class are entitled to costs and attorneys' fees under 42 U.S.C. § 1988(b), 20 U.S.C. § 1415(i)(3), and 29 U.S.C. § 794a(a)(2).

## PARTIES

14. Initials are used throughout this Complaint to preserve the confidentiality of the minor child Plaintiff in conformity with the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g.

15. Lureatha Jackson ("Ms. Jackson") is the guardian of D.M., a child with a disability who resides in Chicago.

16. D.M. is a nine-year-old student who is deaf and has multiple disabilities.

17. Defendant Board of Education of City of Chicago is the legal entity for Chicago Public School District 299 (referred to throughout as "CPS"), which is a school district located in the Northern District of Illinois organized pursuant to the Illinois School Code.

18. Defendant CPS is a "public entity" within the meaning of Title II of the ADA, as that term is defined under 42 U.S.C. § 12131(1) and 28 C.F.R. § 35.104.

19. CPS is a recipient of federal funds and therefore subject to Section 504's non-discrimination mandate, 29 U.S.C. § 794.

20. Defendant Dr. Janice Jackson, sued in her official capacity, is the Chief Executive Officer of CPS. Dr. Jackson is charged with overall administrative responsibility for CPS pursuant to 105 Ill. Comp. Stat. 5/1-1 *et seq*.

## CLASS ALLEGATIONS

21. Pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, Plaintiff brings this action, primarily for injunctive and declaratory relief and incidentally for compensation for food expenditures, on her own behalf and on behalf of all persons similarly situated.

22. The class consists of all CPS students with disabilities who have attended non-public schools in the past two years or will attend non-public schools.

23. The persons in the class are so numerous that joinder of all such persons is impracticable and the disposition of their claims in a class action is a benefit to the parties and the Court. Indeed, Defendants' own data demonstrates that the class of persons consists of approximately 300 students attending therapeutic day schools in the 2018-2019 school year alone.

24. Proposed class members share a well-defined community of interest with respect to both questions of law and fact involved because they are all being denied, or will be denied, access to Defendants' free breakfast and lunch programs merely because their disabilities require placement in a non-public day school.

25. A key common question of law and fact involves Plaintiff D.M.'s allegations that Defendants have violated the ADA and Section 504 by excluding students with disabilities from their free breakfast and lunch programs. Another key question involves the nature of the system-

wide relief that will need to be instituted in order to remedy this discrimination. Because each of these questions is capable of class-wide resolution, Plaintiffs satisfy the commonality requirement under Rule 23(b)(2).

26. Further, D.M.'s claims are typical of the claims of the class as a whole because all proposed class members are similarly affected by Defendants' failure to include all students with disabilities in its free breakfast and lunch programs.

27. D.M. is an adequate class representative because she is directly impacted by Defendants' failure to include students with disabilities in its free breakfast and school lunch programs. Her interests are not antagonistic, or in conflict with, the interests of the class as a whole.

28. The attorneys representing the class are highly trained, duly qualified, and very experienced in representing plaintiffs in civil rights class actions, including actions involving the rights of students with disabilities.

29. By summarily excluding students with disabilities from its free breakfast and school lunch program in violation of mandates imposed under federal disability access laws, Defendants have acted and failed to act on grounds generally applicable to the class as a whole. Accordingly, an award of appropriate declaratory and injunctive relief with respect to the class as a whole is warranted in this case.

30. Plaintiffs seek injunctive and declaratory relief to remedy the policies that have resulted in this exclusion. Additionally, Plaintiffs seek compensation for money they have been forced to expend on school breakfasts and lunches due to their exclusion from CPS's school nutrition programs. This monetary relief is incidental to the injunctive and declaratory relief sought and can be calculated without the participation of individual class members.

31. References to Plaintiffs shall include D.M. and each member of the class, unless

5

otherwise indicated.

## LEGAL FRAMEWORK

### A. School Nutrition Programs

32. The National School Lunch Program became law in the United States when President

Truman signed the National School Lunch Act in 1946. 42 U.S.C. §§ 1751–1769j.

33. Section 1751 of the National School Lunch Act states:

> It is hereby declared to be the policy of Congress, as a measure of national security, to safeguard the health and well-being of the Nation's children and to encourage the domestic consumption of nutritious agricultural commodities and other food, by assisting the States, through grants-in-aid and other means, in providing an adequate supply of foods and other facilities for the establishment, maintenance, operation, and expansion of nonprofit school lunch programs.

42 U.S.C. § 1751.

34. The United States Department of Agriculture ("USDA") administers the National School

Lunch Program, which has grown from serving over seven million children in its first year to

serving over thirty million children in 2016.

35. School districts that participate in the National School Lunch Program receive both cash

subsidies and USDA-provided food for each reimbursable meal they serve.

36. Congress recognized the relationship between good nutrition and a child's development

and capacity to learn, and expanded the National School Lunch Program by piloting a School

Breakfast Program in 1966. 42 U.S.C. § 1771. Congress permanently implemented the School

Breakfast Program in 1975. §

37. Under both the National School Lunch Program and the School Breakfast Program,

children can qualify for free or reduced meals based on several different eligibility mechanisms.

38. First, under financial eligibility, any student whose family earns income under 130

percent of the federal poverty level is eligible for free meals, and students whose families'

incomes are between 130 and 185 percent of the federal poverty level are eligible for reduced-price meals. 42 U.S.C. § 1758(b).

39. Second, students are categorically eligible to receive free school nutrition if the student's family participates in the Supplemental Nutrition Assistance Program (formerly known as food stamps), or if the student is a homeless, migrant, runaway, or foster child. *Id*.

40. Third, and finally, under the Healthy, Hunger-Free Kids Act of 2010 (HHFKA),[2] any child in a designated "high poverty area" participates in a "universal meal service" through the statute's Community Eligibility Provision, or "CEP." 42 U.S.C. § 1759a(a)(1).

41. In 2000, the Illinois legislature recognized hunger and food insecurity as a serious problem affecting as many as a million Illinois residents. It noted that hunger and poor nutrition harms a child's ability to learn: "The General Assembly also recognizes a definite correlation between adequate child nutrition and a child's physical, emotional, and cognitive development. There is also a correlation between adequate nutrition and a child's ability to perform well in school." 105 Ill. Comp. Stat. 125/0.05.

42. To address this correlation, the General Assembly enacted legislation to encourage schools to fully participate in the federal nutrition programs and created a reimbursement mechanism for schools participating in those programs. 105 Ill. Comp. Stat. 125/0.01 *et seq*. According to the legislation, "Every public school must have a free lunch program." 105 Ill. Comp. Stat. 125/4.

---

[2] The Healthy, Hunger-Free Kids Act of 2010 made significant changes in student nutrition programs in order to reduce childhood obesity, increase eligible children's access to school nutrition benefits, and improve program integrity. One of those changes was the creation of the Community Eligibility Provision ("CEP"). Essentially, the CEP allows high-poverty local educational agencies to offer free school meals to all students at no cost. 42 U.S.C. § 1759a(a)(1).

### B. Public Education for Students with Disabilities

43. In 1975, President Ford signed the Education for All Handicapped Children Act (Public Law 94-142), now known as the Individuals with Disabilities Education Act ("IDEA"). 20 U.S.C. §1400 *et seq*.

44. Congress specifically found that: "[d]isability is a natural part of the human experience and in no way diminishes the right of individuals to participate in or contribute to society. Improving educational results for children with disabilities is an essential element of our national policy of ensuring equality of opportunity, full participation, independent living, and economic self-sufficiency for individuals with disabilities." 20 U.S.C. § 1400(c)(1). The IDEA guarantees a free appropriate public education ("FAPE") to students with disabilities. 20 U.S.C. § 1400(d).

45. Under the federal law, a school district must locate, identify, and evaluate all children with disabilities. 20 U.S.C. § 1412(a)(3).

46. Once a school district has evaluated a child with disabilities and found her eligible, the district must provide an Individualized Education Program ("IEP") that meets the student's unique educational needs. 20 U.S.C. § 1400(d); 1412(a)(4).

47. Once the services to be provided under the IEP have been determined, the IEP team must decide where the education program will be provided.

48. In some situations, school districts are unable to meet the educational needs of a child with disabilities within the district's own special education program. 105 Ill. Comp. Stat. 5/14-7.02.

49. Under these circumstances, the Illinois law recognizes that some students with disabilities must be educated in non-public schools or special education facilities. *Id.*

50. Where a school district is unable to provide an appropriate education for a disabled child

in its district, that district is responsible for the costs of tuition and related services at the non-public school or special education facility. *Id*.

51. Non-public special education day programs are often known as "therapeutic day schools."

## FACTUAL ALLEGATIONS

### A. Chicago Public Schools

52. CPS has the responsibility to educate approximately 361,313 students attending 644 schools.

53. CPS's proposed fiscal year budget for 2020 reflects an operating budget of nearly $6.2 billion, which includes the federal funding it receives.

54. During school year 2018-2019, over 50,000 CPS students (14 percent of all students) had disabilities impacting their learning, requiring CPS to implement IEPs.

55. CPS is unable to meet the unique educational needs of all of its students with disabilities within the public school setting and must place some of its students with disabilities in non-public schools.

56. The number of CPS students placed in therapeutic day schools has increased, from about 232 during the 2016-2017 school year to about 298 during the 2018-2019 school year.

57. CPS began participating in the Community Eligibility Provision of the school nutrition program in or about 2014. It continues to participate in the CEP as of the time of this filing.

58. Because of the CEP, Defendants are required to provide free breakfast and lunch for every student in their district.

59. In addition, Defendants provide other nutrition programs to their students, including after-school snacks.

60. While CPS ostensibly provides these free nutrition programs to all of its students, for some of CPS's most vulnerable students—students with disabilities for whom it has determined it cannot provide an appropriate education, and so placed them in a non-public school—CPS does not provide access to its free nutrition programs at school.

61. On information and belief, CPS's policy is not to provide or fund free nutrition programs for CPS students with disabilities placed in non-public schools.

62. On information and belief, at least since June 2016, Defendants, by and through their agent attorney and "Legal Manager," have been informed that their policy of refusing to provide free nutrition to CPS students with disabilities placed in non-public schools harms students with disabilities in violation of federal law.

63. Rather than correcting this practice when so notified, Defendants reaffirmed their policy not to provide free nutrition to CPS students attending non-public schools.

**B. D.M.**

64. D.M. is nine years old and began attending CPS in 2012, after transitioning from Early Intervention services when she was three years old.

65. In 2012, CPS confirmed that D.M. was a student with disabilities (she is deaf and has a potential visual impairment) that substantially impair her major life activities, including her ability to learn.

66. CPS provided D.M. an IEP for the 2012-2013 school year, and each year since.

67. While attending public school, D.M. received free breakfast and lunch through Defendants' meal programs.

68. CPS later determined that it could not meet D.M.'s unique educational needs in the general education setting and placed D.M. in a non-public school, Centerview Therapeutic

10

School, beginning in May 2018.

69. In May 2018, Ms. Jackson (through her attorney), requested that Defendants provide D.M. free nutrition.

70. Defendants' responded that the non-public schools may apply to participate in the National School Lunch and School Breakfast Programs, but further refused to provide assistance.

71. As of the date of this complaint, Defendants have not provided meals to D.M. during her attendance at Centerview or compensated Ms. Jackson, D.M.'s guardian, for the cost of providing breakfast and lunch to D.M.

72. Ms. Jackson must expend her family's limited resources to provide nutrition for D.M. that other CPS students without disabilities receive without charge.

73. Each month, Ms. Jackson is forced to rely upon local food pantries so her family can eat.

74. Defendants' refusal to provide free nutrition for D.M. has harmed and continues to harm D.M. and her family. It creates a significant financial burden for a family in poverty, that has been dependent on food stamps (the Supplemental Nutrition Assistance Program) and living at about 127 percent of the federal poverty level.

75. D.M. financially and categorically qualifies for participation in the National School Lunch and School Breakfast Programs, even if Defendants did not participate in the Community Eligibility Provision.

### C. Harm

76. If not for her disabilities, D.M could have continued to attend a public school, where she qualified for and participated in CPS's free nutrition programs.

77. As a direct result of Defendants' actions, D.M. and members of the Plaintiff Class are suffering irreparable harm, including but not limited to their inability to access the same free

school nutrition programs as their non-disabled peers.

78. Some CPS students with disabilities may attend non-public schools that cover the cost of their meals. But these students are still excluded from the CPS programs and face the risk of (1) their particular school discontinuing its policy of providing free nutrition, (2) being transferred to a school that does not cover meals, and (3) attending a non-public school that does not offer the same nutrition programs that CPS does.

79. The balance of hardships in this case favors Plaintiffs—students with disabilities from families with limited financial resources—rather than Defendants, who participate in a federally-funded meal program to make free school meals available to all CPS students, yet fail to provide these free meals to students with disabilities who attend a non-public school as their CPS placement.

80. D.M. and members of the Plaintiff Class lack the means to post a bond for preliminary injunction, and requiring bond would wrongly condition the exercise of Plaintiff's rights upon their financial status.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### 42 U.S.C. § 12101, *et seq.*

81. Plaintiff and members of the Plaintiff Class incorporate by reference each and every allegation in the foregoing paragraphs as if specifically alleged herein.

82. Title II of the ADA states, in pertinent part:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or subjected to discrimination by any such entity.

42 U.S.C. § 12132.

83. A "public entity" includes state and local governments, their agencies, and their instrumentalities. 42 U.S.C. § 12131(1).

84. Defendants were and are, at all times relevant to this action, "public entities" within the meaning of Title II of the ADA. *Id.*

85. Defendants' free school nutrition programs constitute "services, programs or activities" within the meaning of Title II of the ADA. 42 U.S.C. § 12132.

86. The term "disability" includes physical and mental impairments that substantially limit one or more major life activities. 42 U.S.C. § 12102(1)(A). A "'qualified individual with a disability' means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

87. D.M. and all others similarly situated, were and are, at all times relevant to this action, "qualified individuals with disabilities" within the meaning of Title II of the ADA. They all have impairments that substantially limit a major life activity, and they were all placed in non-public schools by Defendants and, thus, qualified—with or without reasonable modification—to participate in the programs, services, and activities of Defendants.

88. By failing to make free school nutrition available to them, Defendants deny Plaintiff and members of the Plaintiff Class equal access to their programs and services, in violation of Title II of the ADA and its implementing regulations. *See* 42 U.S.C. § 12134; 28 C.F.R. § 35.101 *et seq*.

89. Defendants also cannot contract away their legal duties to persons with disabilities. 28 C.F.R. § 35.130(b)(1).

90. Defendants placed D.M. and members of the Plaintiff Class—because of their

disabilities—in non-public schools after determining that such placement was necessary to provide them an appropriate education. But, in so doing, Defendants simultaneously denied them the benefit of free school nutrition programs. *See* 42 U.S.C. § 12132; 28 C.F.R. § 35.130(b)(1)(i).

91. By failing to provide students with disabilities who attend non-public schools with access to its free nutrition programs, Defendants limit students with disabilities who attend non-public schools from enjoying the same opportunities to benefit from CPS's free nutrition programs that other non-disabled students enjoy. This conduct violates, among other provisions, 28 C.F.R. § 35.130(b)(1)(ii).

92. Defendants use methods of administration that subject Plaintiff D.M. and members of the Plaintiff Class to discrimination by reason of their disability because of Defendants' policy of only providing free nutrition to students who physically attend CPS schools. As such, these methods of administration also have the purpose and effect of defeating or substantially impairing the objectives of Defendants' free nutritional programs with respect to Plaintiff D.M. and members of the Plaintiff Class. This conduct violates, among other provisions, 28 C.F.R. § 35.130(b)(3)(i) and (ii).

93. Defendants fail to make reasonable modifications to their policies and practices necessary to avoid discriminating against D.M. and members of the Plaintiff Class, in violation of 28 C.F.R. § 35.130(b)(7)(i). Such reasonable modifications may include, but not be limited to, compensating the parents of students with disabilities attending non-public schools for meals, or providing the school placements with food for CPS students.

94. By adopting the eligibility criteria of physically attending a CPS school to participate in

its free nutrition programs, Defendants screen out students with disabilities who attend non-public schools from its nutrition programs. This conduct violates, among other provisions, 28 C.F.R. § 35.130(b)(8).

95. Defendants have acted with deliberate indifference at least since 2016, when they were informed that their actions violated federal law, and, in response, they reaffirmed their policy of refusing to provide free nutrition to students with disabilities placed in non-public schools.

96. Because Defendants' discriminatory and wrongful conduct is ongoing, declaratory and injunctive relief are appropriate remedies. Further, as a direct result of Defendants' actions, Plaintiff and members of the Plaintiff Class are suffering financial harm and potentially irreparable harm in the form of hunger. Therefore, speedy and immediate relief is appropriate.

97. Pursuant to 42 U.S.C. § 12133, Plaintiff and members of the Plaintiff Class are entitled to declaratory and injunctive relief, compensatory damages incidental to the injunctive relief, and reasonable attorneys' fees and costs incurred in bringing this action under 42 U.S.C. § 12205.

**COUNT II**
**VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973**
**29 U.S.C. § 794**

98. Plaintiff and members of the Plaintiff Class incorporate by reference each and every allegation in the foregoing paragraphs as if specifically alleged herein.

99. Section 504 of the Rehabilitation Act of 1973 provides, in pertinent part:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]

29 U.S.C. § 794(a).

100. A "program or activity" under Section 504 is described as "all the operations of" the

15

recipient. 29 U.S.C. § 794(b).

101. Defendants' free school nutrition program constitutes a "program or activity" for purposes of 29 U.S.C. § 794(b).

102. Plaintiff and members of the Plaintiff Class were and are, at all times relevant to this action, CPS students eligible for Defendants' free school nutrition programs.

103. Plaintiff and members of the Plaintiff Class were and are, at all times relevant to this action, children with disabilities or a handicap within the meaning of Section 504. Plaintiff and members of the Plaintiff Class have impairments that substantially limit a major life activity.

104. Defendants were and are, at all times relevant to this action, recipients of federal financial assistance within the meaning of Section 504.

105. As recipients of federal funding, Defendants may not exclude a person with disabilities from participating in any of their programs or activities.

106. Because of their disabilities, Defendants placed D.M. and members of the Plaintiff Class in non-public schools, after determining that such placement was necessary to provide them an appropriate education. In so doing, Defendants simultaneously excluded D.M. and members of the Plaintiff Class from the opportunity to participate in and benefit from Defendants' free school nutrition programs. 34 C.F.R. § 104.4(b)(1)(i).

107. By failing to provide students with disabilities who attend non-public schools with access to their free nutrition programs, Defendants limit students with disabilities who attend non-public schools from enjoying the same opportunities to benefit from the free school nutrition programs that other non-disabled students enjoy. This conduct violates, among other provisions, 34 C.F.R. § 104.4(b)(1)(ii).

108. Defendants fail to make reasonable modifications to their policies, practices, and

16

procedures governing the administration of their free nutrition programs, even though these modifications are necessary to avoid discriminating against D.M. and members of the Plaintiff Class. Such reasonable modifications by Defendants may include, but not be limited to, compensating the parents of students with disabilities attending non-public schools for meals, or providing the school placements with food for CPS students.

109. Defendants use methods of administration that have the effect of subjecting D.M. and members of the Plaintiff Class to discrimination by reason of their disability because of Defendants' policy of only providing free nutrition to students who physically attend CPS schools. As such, these methods of administration also have the purpose and effect of defeating or substantially impairing the objectives of Defendants' free nutritional programs with respect to D.M. and members of the Plaintiff Class. This conduct violates, among other provisions, 34 C.F.R. § 104.4(b)(4)(i) and (ii).

110. If not for the existence of Plaintiff's disabilities and Defendants' inability to provide them an appropriate education in any other CPS setting, D.M. and members of the Plaintiff Class could have continued to attend a public CPS school, where they qualified for and received free nutrition.

111. Defendants' exclusion of D.M. and members of the Plaintiff Class from participation in the meal programs has deprived them of their rights under Section 504.

112. Defendants have acted with deliberate indifference at least since 2016, when they were informed that their actions violated federal law and, in response, they reaffirmed their policy of refusing to provide free nutrition to students with disabilities placed in non-public schools.

113. Because Defendants' discriminatory conduct is ongoing, declaratory relief and injunctive relief are appropriate remedies. Further, as a direct result of Defendants' actions, D.M.

and members of the Plaintiff Class are suffering financial harm and potentially irreparable harm in the form of hunger. Therefore, speedy and immediate relief is appropriate.

114. Pursuant to 29 U.S.C. § 794(a), D.M. and members of the Plaintiff Class are entitled to declaratory and injunctive relief, to compensatory damages incidental to the injunctive relief, and to reasonable attorneys' fees and costs incurred in bringing this action.

## COUNT III

## DECLARATORY RELIEF

115. D.M. and members of the Plaintiff Class re-allege and incorporate herein all previously alleged paragraphs in this Complaint.

116. Defendants have failed and are failing to comply with applicable laws prohibiting discrimination against children with disabilities in violation of the ADA, 42 U.S.C. § 12101 *et seq.*, and accompanying regulations, and Section 504, 29 U.S.C. § 794, and accompanying regulations.

117. Defendants deny that they have discriminated against D.M. and members of the Plaintiff Class.

118. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

D.M. and members of the Plaintiff Class respectfully request that this Court:

A. Order that Plaintiffs may maintain this action as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure;

B. Order and declare that the Defendants' conduct as alleged herein has violated, and continues to violate, the ADA, 42 U.S.C. § 12101 *et seq.*, and accompanying regulations,

18

and Section 504, 29 U.S.C. § 794, and accompanying regulations;

C. Enter a preliminary and permanent injunction requiring Defendants to stop denying students with disabilities placed in non-public schools the benefits of Defendants' free school nutrition programs in accordance with the ADA, 42 U.S.C. § 12101 *et seq.*, and accompanying regulations, and Section 504, 29 U.S.C. § 794, and accompanying regulations;

D. Issue a judgment requiring Defendants to compensate D.M. and any other class member attending non-public schools who did not receive the benefit of Defendants' free nutrition programs for the 2017-2018, 2018-2019, and 2019-2020 regular and extended school years;

E. Retain jurisdiction over this case until Defendants have complied with the orders of this Court and there is a reasonable assurance that Defendants will continue to comply in the future, absent continuing jurisdiction;

F. Award attorneys' fees and costs, as provided by statute and law; and

G. Grant any such other relief as the Court finds just and proper.


Respectfully submitted,                                          Dated: August 29, 2019
                                                                 Chicago, Illinois


/s/ Caroline Goodwin Chapman
One of the Attorneys for Plaintiffs

Caroline Goodwin Chapman (ARDC # 6274689)
Julie Harcum Brennan (ARDC #6280162)
Legal Council for Health Justice
17 N. State St., Suite 900
Chicago, Illinois 60602
312-605-1981
cchapman@legalcouncil.org

Jelena Kolic (ARDC #6327964)
Disability Rights Advocates
10 South LaSalle Street, 18th Floor
Chicago, IL 60603
312-559-4600
jkolic@dralegal.org

Michelle Caiola*
Seth Packrone*
Disability Rights Advocates
655 Third Avenue, 14th Floor
New York, New York 10017
212-644-8644
mcaiola@dralegal.org
spackrone@dralegal.org

*Motions to appear *Pro Hac Vice* to be filed

*Attorneys for Plaintiffs*