IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LUREATHA JACKSON, as next friend of D.M., for herself and others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>THE BOARD OF EDUCATION OF THE CITY OF CHICAGO,<br><br>*Defendant*. | Case No.: 19-cv-5809<br><br>Hon. Young B. Kim |

**PLAINTIFF'S MOTION FOR AND MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

I. **Introduction**

Plaintiff, through her counsel at Legal Council for Health Justice and Disability Rights Advocates, seeks entry of an Order 1) finally approving the Settlement Agreement; 2) certifying, for settlement purposes, the proposed Settlement Class under Rule 23(a), (b)(3), and (e); 3) finding the class notice as implemented satisfied Rule 23 and due process; 4) finally appointing Plaintiff Lureatha Jackson, next friend for D.M., as the Settlement Class Representative; 5) finally appointing Julie Brennan, Caroline Chapman, and Sarah Hess of Legal Council for Health Justice and Jelena Kolich and Christina Brandt-Young of Disability Rights Advocates each as counsel for the Settlement Class ("Class Counsel") under Rule 23(g); 6) finally appointing Rust Consulting ("Rust") as the Settlement Administrator; 7) overruling any objection; and 8) granting any other relief the Court deems just and proper. This Motion is unopposed by Defendant ("Chicago Board of Education" or "CBOE"). The Court previously issued an order on June 3rd, 2021 whereby it: (1) granted preliminary approval for the Settlement Agreement as

1

consistent with the strictures of Rule 23(e); (2) certified, for settlement purposes, the proposed Settlement Class under Rule 23(a), (b)(3), and (e); 3) found that the proposed class notice satisfied Rule 23 and due process; 4) preliminarily approved Plaintiff Lureatha Jackson, next friend for D.M., as the Settlement Class Representative; 5) preliminarily approved Julie Brennan, Caroline Chapman, and Sarah Hess of Legal Council for Health Justice and Jelena Kolic and Christina Brandt-Young of Disability Rights Advocates each as counsel for the Settlement Class ("Class Counsel") under Rule 23(g); 6) and, preliminarily approved Rust Consulting ("Rust") as the Settlement Administrator.

The Settlement Agreement in this case brings real and valuable relief to Class Members, including providing direct check reimbursements to all "active students" (as defined by the agreement), enabling inactive students to update their mailing address and receive a payment, and allowing students attending certain schools who paid more for the meals provided at those schools to receive an "excess" reimbursement amount. Of the 393 class members, 338 members are entitled to a direct check without taking any action. Additionally, by the terms of this Settlement Agreement, CBOE shall ensure that students with disabilities who it places in non-public schools receive free breakfast and lunch or have the cost of breakfast at lunch covered. In total, the terms of the settlement create substantial benefits for hundreds of Settlement Class members, are fair, reasonable, and adequate, and meet the requisite criteria for final approval under Rule 23(e). The response by members of the Settlement Class supports a finding that final approval is warranted since there were no objections to or requests for exclusion of the settlement. Accordingly, this motion should be granted and the Settlement finally approved.

**II.     Relevant Background**

On August 29, 2019, Plaintiff Lureatha Jackson filed this lawsuit in the United States

District Court for the Northern District of Illinois as next of friend of D.M. and on behalf of a putative class of Illinois students against Defendants CBOE and Janice K. Jackson, in her official capacity, alleging violations of the ADA (42 U.S.C. § 12132) and Section 504 of the Rehabilitation Act (29 U.S.C. § 794). Dkt. #1. Specifically, Plaintiffs alleged that Defendants failed to provide free and reduced cost nutrition available under Illinois and federal law to students with disabilities that it placed in non-CBOE schools. *See* 105 Ill. Comp. Stat. 125/4, 42 U.S.C. § 1771.

On September 10, 2019, Plaintiffs filed a Motion to Certify Class and Memorandum In Support of Motion to Certify Class. Dkt. #11, 13. On November 12, 2019, CBOE filed an answer and affirmative defenses to Plaintiffs' Complaint and Defendant Janice K. Jackson filed a motion to dismiss for failure to state a claim.[1] Dkt. #32, 33. CBOE alleged, inter alia, that Plaintiffs' claims had not been exhausted, did not meet the class certification requirements, should be reduced by failure to mitigate, and were time barred. *Id.* Instead of briefing Plaintiffs' Motion to Certify Class, the parties agreed to discuss settlement with Magistrate Judge Kim.

On February 3, 2020, the Parties attended their first settlement conference in this matter. Dkt. #37. Thereafter, the Parties engaged in extensive arm's-length negotiations over the course of more than a year, and have now reached a final settlement agreement that is before the Court.

### III. The Principal Terms of the Settlement

The terms of settlement between the Parties are set forth in the Settlement Agreement attached as Exhibit A and briefly summarized as follows:

#### A. Class Definition

The Settlement Class is divided into two subclasses. *See* Agreement, ¶2(U), p. 5-6.

---

[1] On September 15, 2020, the parties agreed to dismiss Defendant Janice K. Jackson and proceed against CBOE only. Dkt, #69.

"Subclass 1 Members shall mean and refer to all CPS students with disabilities who were placed by the Board pursuant to the students' [Individualized Education Program ("IEP")] at ISBE-approved non-public schools for the 2017–2018, 2018–2019, and 2019–2020 school years who did not receive Free Nutritional Benefits." *Id.* at 5 (internal quotations omitted). "Subclass 2 Members shall mean and refer to any student placed in an ISBE approved non-public school by the Board pursuant to the student's IEP from March 17, 2020 to the termination of [the settlement] agreement . . . who does not receive Free Nutritional Benefits." *Id.* at 6.

### B. Monetary Relief for Plaintiff and Subclass 1

The Settlement Agreement creates a qualified settlement fund to reimburse Subclass 1 Members to settle their claims in their entirety (including "excess claims," if submitted) and to reimburse Plaintiff Jackson to settle her claim and to pay her a service award total of $5,397.72. *Id.* As to other class members, the parties agreed to a reimbursement rate based upon the amounts CBOE paid for meals for other students in the general education setting. The Settlement Funds shall reimburse Subclass 1 Members at a rate of:

- $5.53 per attendance day for those who attended Acacia, Arlyn, Bridgeview, Centerview, Challenger, Chicago Autism Academy, Classroom Connections Day School, Elim Christian, Esperanza, Giant Steps, Helping Hand, Hyde Park Day School-Chicago, Hyde Park Day School-North, Keshet, Learning House, New Hope Academy, New Hope Academy East, Orchard Academy, Rush, Soaring Eagle Academy and did not receive breakfast and lunch;
- $2.19 per attendance day for those who attended Laureate, Metro Prep, New Horizon, School of Expressive Arts and Learning (SEAL) and did not receive breakfast; and
- $3.34 per attendance day for those who attended Hopewell Academy of Orland Park, Cove, and PACTT Learning Center and did not receive lunch.
- Subclass 1 Members who attended Arlyn, Cove, Hyde Park, Keshet, or Learning House and did not receive Free Nutritional Benefits may be eligible for an additional amount of $1.97 per attendance day, upon submitting an affidavit form.

*Id.* ¶8(M), p. 13. The total amount of reimbursements to Subclass 1 Members is up to $524,884.28.

4

### C. Injunctive and Prospective Relief for Subclass 1 and Subclass 2

Defendant agrees to "ensure that all CPS students with disabilities placed by the Board pursuant to the students' IEP in a non-public school will have access to Free Nutritional Benefits at no cost to the student's parent(s)/guardian(s)." *Id.,* ¶8(A), p. 7. Defendant has also developed a Free Nutrition Letter that is available to parents and guardians informing them of their ability to receive Free Nutritional Benefits and explaining the process through which to request them and file a complaint if they are not granted. *Id.*, ¶8(B)-(D), p. 8-9. This letter was posted by the beginning of the 2020–2021 school year on the Board's special education department's website and is translated into English, Spanish, Arabic, Chinese, Polish, and Urdu. *Id.*, ¶8(B), p.8. CBOE has created an internal review process to allow parents and guardians to submit complaints and receive reimbursement when a non-public school fails to provide Free Nutritional Benefits. *Id.*, ¶8(D), p. 8-9.

Each ISBE *Nonpublic Facility Placement Contract* between the Board and non-public schools will also require the non-public school to provide Free Nutritional Benefits and include reimbursement payments for such benefits by the Board to the school, if necessary. *Id.*, ¶8(E), p. 9. Additionally, CBOE staff "responsible for placement of students in non-public schools pursuant to an IEP will receive annual training regarding the obligations contained in [the Settlement Agreement] and the Free Nutrition Letter for the duration of the Settlement Agreement. *Id.*, ¶8(F), p. 9. Finally, CBOE will document all complaints made about non-compliance and submit a report to Class Counsel on a bi-annual basis. *Id.*, ¶8(G), p. 9-10.

### D. Release of Liability

In exchange for this relief, Plaintiff Jackson, Subclass 1, and Subclass 2 Members agree to release of claims arising from the events described in the complaint, as outlined in the

5

proposed agreement. *Id.,* ¶31, p. 22. Plaintiff Jackson and Subclass 1 Members release monetary and non-monetary claims that could have been brought in the litigation. Subclass 2 members release non-monetary claims arising directly or indirectly out of the events, allegations, and claims that were the basis of this litigation.

### D. Complaint and Dispute Resolution

The Settlement creates both a complaint and a dispute resolution process for all Class Members. Paragraph 8(B) requires CBOE to create a process whereby Class Members who do not receive free breakfast and/or lunch or reimbursement for those meals can complain to CBOE. Agreement, p. 13, see also Exhibit D to the Agreement.

If the complaint process does not obtain a satisfactory outcome, Class Members may invoke the Dispute Resolution process by first escalating the matter to CBOE's Counsel in writing, and if that fails to resolve the matter, by bringing it before this Court pursuant to Paragraph 9 of the Agreement. *Id.*, p. 13-14. The Court retains jurisdiction for the duration of the Settlement Agreement (through July 30, 2024). *Id.*, ¶32, p. 28.

### E. Payment of Settlement Administrator and Administrative Costs

The Settlement requires CBOE to pay up to $25,000 to the Settlement Administrator through the Settlement Fund in order to fund the administrative costs and the costs of notice. *Id.,* ¶8(M)(iii), p. 13.

### F. Payment of Attorneys' Fees and Expenses

Under the terms of the Settlement, the Parties have resolved the case vis-à-vis the Class Members. Plaintiff's counsel will file a fee petition within 60 days of Final Approval, to be decided by the Court at a later date.

## IV. The Implemented Notice Plan Comports with Due Process.

Prior to granting final approval of this Settlement, the Court must first consider whether the Notice to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 595 (N.D. Ill. 2011). The "best notice practicable" does not require receipt of actual notice by all class members in order to comport with both Rule 23 and the requirements of due process, but it often includes (as in this case) direct notice to individuals who can be identified by regular mail. See *Burns v. Elrod*, 757 F.2d 151, 154 (7th Cir. 1985) (noting that "Rule 23 does not require defendants to exhaust every conceivable method of identification").

In the Order granting preliminary approval, this Court approved the Notice Plan, including the form, content, and distribution of the notice and forms. Dkt. 101, ¶ 9. The Court found that the Notice Plan constituted valid, due, and sufficient notice to all persons entitled to notice and met the requirements of due process. *Id.* The Notice Plan approved by the Court in this case has been implemented by the Court-approved Settlement Administrator (Rust Consulting) and included direct notice. CBOE identified all members of the class and their most recent mailing addresses on file. CBOE provided an affidavit about the accuracy and completeness of the class member data. Exhibit 2. CBOE provided data regarding the last known addresses and telephone numbers of all class members to Class Counsel and the Settlement Administrator on June 22, 2021 along with an affidavit of CBOE employee Tamara West executed on May 27, 2021, attesting to the accuracy of that information. Exhibit 2.

Direct notice, along with excess claim and address update forms (with pre-paid reply), were provided to every class member identified by CBOE via regular U.S. Mail. Dkt. 102, Exh.

7

1, Declaration of Lisa Pavlik for Rust Consulting Inc. Rust mailed out 393 notices in English and Spanish on July 1, 2021. *Id.*, ¶ 9. As of the date of the Declaration, 32 notices were returned as undeliverable without forwarding addresses. *Id.*, ¶ 10. Upon notices being returned as undeliverable, Rust conducted skip traces in order to obtain addresses based on credit and other public source databases for 32 class members. *Id.* Rust then mailed out a second notice to 21 class member addresses obtained through the skip trace. *Id.* Of the 11 class members for whom more current information could not be obtained through a skip trace, Rust attempted to phone each class member at least twice, unless the phone number was invalid (wrong number, disconnected, etc.). *Id.* In total, only 15 notices remained undeliverable. *Id.* Using this data supplied by Rust, 96.18% of the class members received direct individual notice in this case.

In addition, the notice (and excess claim and update forms) as well as important Court documents (including the Complaint, Motion for Preliminary Approval, and Order on Preliminary Approval) were posted online at https://legalcouncil.org/resources-cpslunch/, a webpage referenced in the mailed notices. That webpage also contains telephone contact information for CBOE's counsel and Class Counsel.

Finally, Rust set up a toll-free number for class members to contact with questions Monday through Friday from 8a.m. to 6p.m. CST. Dkt 102, Exh. 1, ¶ 5. Rust staff fielded calls from 9 callers over the course of the notice period. *Id.,* ¶ 16.

This data demonstrates that the class members received the best notice practicable under the circumstances and meets the requirements of due process and Rule 23.

V.     **The Settlement Merits Final Approval.**

Federal Rule of Civil Procedure 23(e) mandates that "claims, issues, or defenses of a certified class may be settled . . . only with the court's approval . . . after a hearing and on finding

that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e); *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, Nos. 07 CV 2898, 09 C 2026., 2012 WL 651727, at *1 (N.D. Ill. Feb. 28, 2012), *appeal dismissed*, *Safeco Ins. Co. of Am. v. Am. Int'l Grp.*, 710 F.3d 754 (7th Cir. 2013). Even so, "[f]ederal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (citations omitted). Given this predisposition towards settlement, the Court's approval inquiry "is limited to [consideration of] whether the settlement is lawful, fair, reasonable and adequate." *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002).

The Seventh Circuit has identified five factors for district courts to consider in determining whether to approve a class action settlement: (i) the strength of a plaintiff's case compared to the amount of the defendant's settlement offer; (ii) an assessment of the likely complexity, length and expense of the litigation; (iii) an evaluation of the amount of opposition to the settlement among affected parties; (iv) the opinion of competent counsel; and (v) the stage of the proceedings and amount of discovery completed at the time of settlement. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (citation and internal quotations omitted); *accord In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 958 (N.D. Ill. 2011) (hereinafter "*In re AT&T II*"). In addition to these factors, courts in the Seventh Circuit also consider whether the settlement is the product of collusion, or whether there are any "red flags" present in the settlement that would suggest it is unfair to the class. *Eubank v. Pella Corp.*, 753 F.3d 718, 723-29 (7th Cir. 2014).

As explained below, these factors overwhelmingly weigh in favor of approving the Settlement in this case.

    **A.**    **The Settlement Agreement is fair in light of the strength of the Plaintiff's case balanced against the Settlement Agreement's offer.**

9

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *In re AT&T II*, 789 F. Supp. 2d at 958 (quoting *Synfuel*, 463 F.3d at 653) (internal quotations omitted). The strength of a plaintiff's case can be quantified by examining "the net expected value of continued litigation to the class" and then estimating "the range of possible outcomes and ascrib[ing] a probability to each point on the range." *Am. Int'l Grp., Inc.*, 2012 WL 651727, at *2 (quoting *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284-85 (7th Cir. 2002) and *Synfuel*, 463 F.3d at 653); *see also Eubank*, 753 F.3d at 727 (finding that the district court should "estimate the likely outcome of a trial . . . in order to evaluate the adequacy of the settlement"). However, "[t]he Seventh Circuit has recognized that valuing hypothetical continued litigation is necessarily speculative and therefore an inexact science," and courts need only "estimate and come to a ballpark valuation" of the class's claims. *Kolinek v. Walgreen, Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (citation and internal quotations omitted); *see also In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) ("In considering the strength of plaintiffs' case, legal uncertainties at the time of settlement favor approval."). Ultimately, because a settlement is a compromise, "courts need not—and indeed should not—'reject a settlement solely because it does not provide a complete victory to the plaintiffs.'" *In re Capital One Telephone Consumer Protection Act Litigation*, 80 F. Supp. 3d 781, 790 (N.D. Ill. 2015) (quoting *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (hereinafter "*In re AT&T I*")).

   The Settlement Agreement provides real and immediate injunctive relief to class members by requiring CBOE to ensure free breakfast and lunch (or a reimbursement stipend for those meals where they cannot be physically provided), and this relief has already been

implemented under the terms of the agreement. In addition, families who did not receive free breakfast and lunch from August 2017 to March 2020 will receive reimbursements for those meals. Of the 393 class members, 325 members will receive direct checks. Dkt. 102, Exh. 1, ¶ 17. This means that in addition to the injunctive relief, 82.7% of the class will receive a reimbursement check. The reimbursement formula accounts for each missed breakfast and/or lunch and reimburses families based on the number of attendance days during which each meal was not provided. Class members will receive anywhere from $5.53 to $3,190.81, with the average reimbursement totaling $1,225.69. In addition, the Settlement provides immediate relief (with reimbursement checks being mailed on December 15, 2021), whereas a return to litigation in this matter delays relief to the class for an unknown period of time, at best. As of 2020, 78.8% of students of CBOE were low-income. *See*, https://www.illinoisreportcard.com/district.aspx?source=studentcharacteristics&source2=lowincome&Districtid=15016299025 (last visited Aug. 11, 2021). Such a delay is of no small import to these families.

    Furthermore, even if Plaintiff succeeded with class certification and proceeded to trial, the outcome of that trial and amount of any potential damages are by no means guaranteed and may not exceed the amounts provided in the Settlement. The damages formula in the Settlement Agreement captures calculable losses by the class members per actual attendance day. The Settlement also provides substantial, guaranteed, and immediate relief, without subjecting class members to the delay and uncertainty of going to trial. Given the substantial risks, expense, and delay that would accompany further protracted litigation, the Settlement offers real value. The first, and most important, *Synfuel* factor, therefore, strongly supports final approval.

    **B.  The Likelihood of an Increase in the Complexity, Length, and Expense of Continued Litigation Supports Final Approval of the Settlement.**

Final approval is favored in cases such as this where "[s]ettlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte*, 805 F. Supp. 2d at 586. Here, the best alternative to the Settlement is a trial, which is an inherently risky proposition.

As the case would be relegated to its infancy if Settlement is denied, Plaintiff would need to engage in extensive discovery, including subpoenas and depositions, in order to gather admissible evidence from each of the sixty-two separate non-public schools that CBOE students attended since 2017 and whether CBOE students received free breakfast and/or lunch during their attendance. Although this information has been gathered by and attested to by CBOE for settlement purposes, formal discovery would be necessary to make it admissible at trial if the parties were unable to stipulate. Further, in its Answer, CBOE indicated its intention of arguing that 1) plaintiff failed to exhaust administrative remedies, 2) the proposed class action fails to meet the numerosity requirement, 3) the proposed class action fails to meet the commonality requirement, 4) the proposed class action fails to meet the typicality requirement, 5) the named plaintiff would not adequately and fairly protect the interests of the proposed class, 6) the proposed class action lacks common questions of law or fact, and 7) the plaintiff failed to mitigate any damages. Dkt. 32, p. 25. Not only would Plaintiff face the significant evidentiary burdens involved with extensive discovery directed to non-parties, she would also need to fight for class certification, and she would face a motion arguing that this action should have been brought in another forum altogether.

Finally, the longer the litigate takes, the harder it will become to locate the class members, particularly given the Covid-19 pandemic and the looming end of the eviction moratorium. Even utilizing a skip trace, Rust was unable to serve 15 members of the class. Dkt.

102, Exh. 1, ¶ 10. As time goes by engaging in the full scope of the litigation and trial process, even more members of the class will become increasingly difficult to locate.

In any event, "this drawn-out, complex, and costly litigation process . . . would provide [Settlement] Class Members with either no in-court recovery or some recovery many years from now…" *In re AT&T II*, 789 F. Supp. 2d at 964. The proposed Settlement, in contrast, avoids the uncertainty of trial—and potential appeals—and instead provides instant injunctive relief to the Settlement Class as well as funds that should be distributed by December 2021. As such, the second *Synfuel* factor also weighs in favor of final approval.

### C. The Lack of Opposition to the Settlement Weighs in Favor of Final Approval.

In this case, class members demonstrated that they overwhelmingly approved of the Settlement. None of the 393 class members objected or excluded themselves from the Settlement. The Court should consider the fact that there is no opposition to the Settlement as "strong circumstantial evidence favoring settlement." *See In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020–21 (N.D. Ill. 2000) (finding that a settlement where "99.9% of class members have neither opted out nor filed objections . . . is strong circumstantial evidence in favor of the settlements"); *In re AT&T II*, 789 F. Supp. 2d at 965 (an exclusion or objection rate of 0.01% of class members was "remarkably low" and supported the settlement).

### D. The Opinion of Competent Counsel Favors Approval.

The next factor considered by courts is the opinion of competent counsel regarding the fairness, reasonableness and adequacy of the Settlement. *Synfuel*, 463 F.3d at 653; *see also Schulte*, 805 F. Supp. 2d at 586 ("The opinion of competent counsel is relevant to the question whether a settlement is fair, reasonable, and adequate under Rule 23."). This is especially true where class counsel are qualified, where discovery and settlement negotiations have taken place,

13

and where there is no indication of collusion. *See id.*; *see also Hispanics United v. Vill. of Addison*, 988 F. Supp. 1130, 1150 n.6 (N.D. Ill. 1997) (noting that a "strong initial presumption of fairness attaches" where the settlement is "the result of arm's length negotiations," and where plaintiff's counsel are "experienced and have engaged in adequate discovery").

Here, the attorneys representing the class have experience in representing plaintiffs in civil class actions, particularly actions involving the rights of people with disabilities.[2] Compl. ¶ 28. Courts have granted Legal Council attorneys appointment as class counsel in a wide variety of cases involving public benefits that have benefitted thousands of Illinois adults and children with disabilities. *See, e.g., O.B. v. Norwood*, No. 15 C 10463, 2016 WL 2866132 (N.D. Ill. May 17, 2016) (granting class certification to class of medically complex children with Medicaid in Illinois, and naming Legal Council as class counsel); *M.A. v. Norwood*, No. 15 C 3116, 133 F. Supp. 3d 1093 (N.D. Ill. Sept. 23, 2015) (granting class certification to class of Illinois children receiving in-home nursing through Medicaid, and naming Legal Council as class counsel). Legal Council has sufficient experience to adequately represent the class.

DRA likewise has extensive expertise in class actions such as these. Some of the numerous impact cases where DRA has acted as class counsel include *Brooklyn Center for Independence of the Disabled v. Bloomberg*, 980 F. Supp. 2d 588 (S.D.N.Y. 2013), which litigated the systemwide inaccessibility of New York City's emergency preparedness program; *Bronx Independent Living Services v. Metropolitan Transportation Authority*, 358 F. Supp. 3d 324 (S.D.N.Y. 2019), which challenged MTA's failure to install elevators at subway stations without regard to cost when undertaking alterations affecting stations' usability on behalf of New

---

[2] Plaintiff understands that CBOE has reserved the right to raise objections to the fee petition as it relates to the reasonableness of Plaintiff's fees, costs, hours, hourly rates, and duplication of effort.

Yorkers with mobility disabilities; *United Spinal Association v. Board of Elections*, 752 F.3d 189 (2d. Cir. 2014), which litigated the failure of the New York City's Board of Elections to ensure accessibility of its 1,300 poll sites throughout New York City; *Center for Independence of the Disabled, New York, et al., v. City of New York*, Case No. 14 CV 5884 (GBD) (KNF) (S.D.N.Y. 2014), which litigated the inaccessibility of New York City's public rights of way; *City Taxi and Limousine Commission and the City of New York*, No. 11-cv-0237-GBD (S.D.N.Y.), which litigated the inaccessibility of New York City's yellow medallion taxi fleet; and, *Phillips et al. v City of New York et al.*, Case No. 1:11-cv-06685 (S.D.N.Y.), which challenged the New York City Police Department's blanket ban on the use of hearing aids by uniformed police officers. In each of these cases, DRA effectively performed its class counsel duties, securing systemic reform for hundreds of thousands of people with disabilities.

This substantial and relevant experience has allowed Class Counsel to accurately weigh the merits of the Settlement Class's claims along with the risks and potential rewards of trial and appeals as compared to the Settlement. Class Counsel ultimately believe that the Settlement provides significant relief for individuals who may otherwise be left without a remedy, and thus, the opinion of Class Counsel favors final approval as well.

      **E.**      **The Stage of the Proceedings and Amount of Discovery Completed Weigh in Favor of Final Approval.**

The factor relating to the stage of the proceedings and amount of discovery completed at the time the settlement is reached also favors final approval here. *Synfuel*, 463 F.3d at 653. This factor is satisfied where "discovery and investigation conducted by class counsel prior to entering into settlement negotiations was extensive and thorough." *Isby*, 75 F.3d at 1200 (citation and internal quotations omitted). While the parties here did not engage in formal discovery, CBOE has provided sworn statements regarding the material factual aspects of the Settlement.

15

CBOE provided data and a sworn statement regarding its validity on: 1) its investigation into the scope of which non-public schools provided and did not provide its students free breakfast and lunch, 2) which students' families must be included as class members, and 3) which of the non-public schools charged an excessive amount for its meal plan and entitled families to the "excess claim." Exhibit 3. This verified data is sufficient for Class Counsel and the Court to assess the adequacy and fairness of the Settlement Agreement without more formal discovery.

      **F.**      **The Settlement is Not a Product of Collusion and There are No "Red Flags" Present.**

Although not a factor specifically set forth in *Synfuel*, courts in the Seventh Circuit also consider whether a settlement is the product of collusion, and whether there are any "red flags" present in the settlement that would suggest it is unfair to settling class members. *Eubank*, 753 F.3d at 722–29. Some of the red flags include (i) the failure to properly establish the size of the fund and the total class recovery, (ii) the reversion of unawarded attorneys' fees to the defendant, (iii) substantial alterations to existing class definitions, (iv) the use of coupons, rather than cash payments, for class compensation, and (v) overly complicated claim forms. *See id.* Here, the Court should not hesitate to grant final approval to the Settlement because the Settlement was not the result of collusion, nor does it raise any of the "red flags" identified by the Seventh Circuit and other courts in analyzing class settlements.

First, there can be no doubt that this Settlement avoids any collusion. The Parties engaged in extensive settlement negotiations, beginning in about September 2019 and continuing until Settlement was reached in May 2021. Many aspects of the settlement negotiations were facilitated by Judge Young B. Kim pursuant to a referral order from Judge Sharon Johnson Coleman. Dkt. 28. *See Butler v. Am. Cable & Tel., LLC*, 2011 WL 2708399, at *8 (N.D. Ill. July 12, 2011) ("arm's-length negotiations facilitated by a neutral mediator is one factor . . . that

supports a finding that the settlement was fair") (citing *McKinnie v. JP Morgan Chase Bank*, 678 F.Supp.2d 806, 812 (E.D. Wis. 2009)). There was no collusion in the negotiations that led to the Settlement.

Second, none of the "red flags" identified in *Eubank* are present here. First, the size of the settlement fund is known and was calculated based on the reasonable amount of damages that each class member would be entitled to receive, factoring in all possible "excess claims." That stands in stark contrast to the *Eubank* fund, the size of which could only be "loosely" estimated. *Eubank*, 753 F.3d at 723. The Court also knows exactly how the fund will be distributed. And while the exact recovery available to class members making "excess claims" has not yet been finally determined, the standard payments still apply to all active students and will automatically be issued to at least all active students whose notices were not returned as undeliverable. Thus, unlike in *Eubank*, the Court here knows how much the Settlement Class will recover (at minimum) in both the aggregate and on an individual class member basis.

Further, all aspects of the settlement, including issuance and mailing of the notice, execution of skip traces, questions from class members, updating of contact information, processing of excess claim forms, telephone calls to class members whose notice has been returned, and mailing of checks will be done by a third-party settlement fund administrator, Rust Consulting.

Nor does the Settlement Class definition call into question the propriety of certification as it did in *Eubank*. There, the Seventh Circuit recognized adversity among several certified subclasses, thus rendering the settlement's provision of a single, unified class improper. *Eubank*, 753 F.3d at 721. Here, while the two certified subclasses (Subclass 1 Members are those families who will receive reimbursement checks for the nutrition that was not provided from August 2017

17

to March 2020, and Subclass 2 Members are those families placed in non-public schools after March 2020 who are entitled to injunctive relief for not receiving free nutrition) may often be overlapping, no direct adversity exists between them. The subclasses merely reflect the time constraints inherent in adjudicating past versus future actions by the Defendant. Because there are no competing groups within the Class, none of the diametrically opposed interests in *Eubank* are present here. *See id.* (finding "the adversity among subgroups" precluded class certification of one large class for settlement purposes) (citation and internal quotations omitted).

Unlike the *Eubank* settlement, which proposed providing only coupon payments to some class members through exceedingly long and difficult claim forms, *id.* at 725, this Settlement allows most Class Members to receive direct checks by taking no action at all. Some members needed to fill out an easy-to-complete address update form to update the Settlement Administrator on where to send the check. And some class members needed to complete and mail in a self-addressed-stamped form document specifying their name, address, and attesting the school at which they paid the excess amount for meals and over which school years. No additional or supporting documentation was required of any class member.

Finally, Class Counsel acted fully without collusion and as a result of arm's-length negotiation. None of Class Counsel's attorney's fees are at all contingent on the Settlement terms or fund amount. The terms of the Settlement require Class Counsel's fees to be decided by this Court at a later time via a fee petition.

Given the absence of any red flags and the lack of opposition to the Settlement, the Court should grant final approval to the Settlement.

## VI. Conclusion

For the reasons addressed above, Plaintiff respectfully requests that this Court finally

approve the Settlement as fair and reasonable.

Respectfully submitted,

*FOR PLAINTIFF:*

| LEGAL COUNCIL FOR HEALTH JUSTICE | DISABILITY RIGHTS ADVOCATES |
|---|---|
| *s/Caroline Goodwin Chapman* | *s/Jelena Kolic* |
| Caroline Goodwin Chapman | Jelena Kolic |
| Julie Harcum Brennan | 10 South LaSalle Street, 18th Floor |
| Sarah Hess | Chicago, IL 60603 |
| 17 N. State Street, Suite 900 | jkolic@dralegal.org |
| Chicago, Illinois 60602 | |
| Tel: (312) 605-1981 | Christina Brandt-Young |
| cchapman@legalcouncil.org | 655 Third Avenue, 14th Floor |
| jbrennan@legalcouncil.org | New York, NY 10017 |
| Shess@legalcouncil.org | Tel: (212) 644-8644 |
| | Cbrandt-young@dralegal.org |

Date: September 27, 2021